UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

JESSICA MARIE MYERS,                    )
                                        )
                 Petitioner,            )
v.                                      )        No.:   3:17-CV-303-TAV-HBG
                                        )
WARDEN TRINITY MINTER,                  )
                                        )
                 Respondent.            )

## MEMORANDUM OPINION

Now before the Court is a pro se prisoner's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254 [Doc. 1], and memorandum in support thereof [Doc. 2]. Respondent filed a response in opposition thereto [Doc. 10], as well as a copy of the state record [Doc. 9], and Petitioner filed a reply [Doc. 11]. After reviewing all relevant filings, including the state court record, the record conclusively establishes that Petitioner is not entitled to relief under § 2254. Accordingly, no evidentiary hearing is warranted, *see* Rules Governing § 2254 Cases, Rule 8(a) and *Schirro v. Landrigan*, 550 U.S. 465, 474 (2007), Petitioner's § 2254 petition [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**.

## I.      STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court may not grant habeas corpus relief for a claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

>    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2). The § 2254(d) standard is a hard one to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d) . . . is a purposefully demanding standard . . . 'because it was meant to be'") (quotation omitted).

## II.    BACKGROUND

On the evening of October 12, 2009, Petitioner and her then-boyfriend, Shawn Jones, argued with Rhonda and Jimmy Cutshall ("the victims") about prescription pills at the victims' trailer home. *State v. Myers*, No. E2012-01814-CCA-R3-CD, 2013 WL 5436955, at *1 (Tenn. Crim. App. Sept. 27, 2013). Several hours later, on October 13, Petitioner and Jones broke into the victims' trailer and both of the victims were shot [*Id.*]. Jimmy Cutshall died, but Rhonda Cutshall survived [*Id.*].

Based on this incident, a Knox County jury found Petitioner guilty of one count of first-degree premeditated murder, three counts of first-degree felony murder (which the trial court merged together), and one count of reckless endangerment. *State v. Myers*, No. E2012-01814-CCA-R3-CD, 2013 WL 5436955, at *1 (Tenn. Crim. App. June 25, 2013). Petitioner appealed, alleging that the evidence was insufficient to support her convictions, that one indictment against her was defective, and that the trial court erred in admitting certain cumulative photographs [Doc. 9-10 p. 46–56]. The Tennessee Court of Criminal

Appeals ("TCCA") affirmed the convictions, but remanded the case for the trial court to merge the homicide convictions. *Id.* at \*9–15.

Petitioner also filed a pro se petition for post-conviction relief, which asserted various claims for ineffective assistance of counsel and a claim that the evidence was insufficient to support her convictions [Doc. 9-17 p. 5–15]. The post-conviction court appointed Petitioner counsel, who filed an amended petition for post-conviction relief that included additional claims for ineffective assistance of trial and appellate counsel [Doc. 9-17 p. 23–26]. After a hearing, the post-conviction court denied Petitioner relief [Doc. 9-17 p. 34–43; Doc. 9-18]. Petitioner appealed, requesting review of the denial of five of her claims for ineffective assistance of trial and appellate counsel [Doc. 9-20 p. 11–21]. The TCCA affirmed the judgment of the post-conviction court. *Myers v. State*, No. E2015-02037-CCA-R3-PC, 2016 WL 6915967 (Tenn. Crim. App. Nov. 24, 2016).

In this action, Petitioner seeks relief under § 2254 based on the following claims:

(1)     The evidence was insufficient to support her conviction for the first-degree and felony murder of Jimmy Cutshall based on the theory of criminal responsibility;

(2)     The indictment was defective;

(3)     Counsel was ineffective for:

      a.     Failing to argue that the indictment was defective prior to trial;

      b.     Failing to request a change in venue;

      c.     Failing to request sequestration of the jury;

      d.     Failing to refute the serology/DNA report;

e.  Failing to argue that the glove containing an unidentified fingernail was unduly prejudicial and was not evidence that Petitioner was the shooter;

f.  Failing to retain an independent expert to prove Petitioner was a "battered woman" to refute her intent; and

g.  Failing to exclude two jurors during voir dire.

[Doc. 1 p. 5, 6, and 8].

## III. ANALYSIS

### A. Sufficiency of the Evidence

Petitioner challenges the sufficiency of the evidence underlying her convictions for the first-degree and felony murder of Jimmy Cutshall [*Id.* at 5; Doc. 2 p. 1–2]. But the evidence was sufficient to support her conviction under a criminal-responsibility theory, especially in light of the deferential nature of this Court's review.

In her petition, Petitioner states the following with regard to her sufficiency-of-the-evidence claim:

> Petitioner was convicted of first-degree murder under the theory of criminal responsibility.  [] Petitioner has not denied that she was present during the crimes[,] however[,] she was not present by choice.  She was physically forced and threatened by codefendant and (then) boyfriend, Shawn Jones, when she tried to leave.  Mr[.] Jones further told Petitioner that he would not think twice about putting a bullet in her.  She did not take part in the actual crimes and was physically forced to be there, therefore she should not have been convicted and sentenced to life in prison.

[*Id.*].  Petitioner also states as follows with respect to this claim:

> In the case *sub judice*, no evidence was presented that the defendant acted with intent to promote or assist in the

commission of the murder of Jimmy Cutshall. The Petitioner herself was a victim as she was forced by codefendant Jones to be present while he committed the murder. When Ms. Myers attempted to leave, Mr. Jones forcefully made her stay. The evidence in this case was far from clear. There was no hard evidence presented at Petitioner's trial showing that she participated in the crimes committed against the victim in this case.

The proof in this case[] in no way establishes beyond a reasonable doubt that Jessica Marie Myers had the requisite intent to be held criminally responsible for the murder [of] Jimmy Cutshall.

[Doc. 2 p. 2–3]. Thus, it appears that Petitioner asserts only that she is entitled to relief under § 2254 from the TCCA's holding that the evidence was sufficient to establish that she was liable for the murder of Jimmy Cutshall under the criminal-responsibility theory because, according to her, that holding was based on an unreasonable determination of the facts (i.e., the evidence presented at trial).

In holding that the evidence was sufficient to sustain all of Petitioner's convictions, the TCCA applied Tennessee case law, examined the required elements of each charge against Petitioner, and summarized the relevant evidence from the trial to find that the evidence was sufficient to support Petitioner's convictions under the theory of criminal responsibility. *State v. Myers*, No. E2012-01814-CCA-R3-CD, 2013 WL 5436955, at *9– 12 (Tenn. Crim. App. June 25, 2013). The TCCA specifically stated the following with regard to the first-degree- and felony-murder charges:

First degree murder, as charged in the first count, is "a premeditated and intentional killing of another." T.C.A. § 39– 13–202(a)(1) (2006). A person "acts intentionally with respect

to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39–11–302(a). A premeditated act is one done after the exercise of reflection and judgment, where the intent to kill was formed prior to the act. T.C.A. § 39–13–202(d). The intent to kill need not exist in the mind of the accused for any definite period of time. *Id.* Premeditation can be supported by evidence of the defendant's declarations of an intent to kill; evidence that the defendant procured a weapon; the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; infliction of multiple wounds; preparations made prior to the killing for concealment of the crime, destruction or secretion of evidence; and calmness immediately after the killing. *State v. Jackson,* 173 S.W.3d 401, 409 (Tenn. 2005).

Felony murder is defined as the "killing of another committed in the perpetration of or attempt to perpetrate" one of a series of enumerated felonies. T.C.A. § 39–13–202(a)(2). Count Two charged the defendant with a killing committed in the perpetration of or attempt to perpetrate robbery. "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39–13–401(a). Count Four charged the defendant with a killing committed in the perpetration of or attempt to perpetrate a theft. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39–14–103(a). Count Three charged the defendant with felony murder in which the predicate felony was burglary. As relevant here, a burglary is committed when a person, without the effective consent of the property owner, enters a building and commits or attempts to commit a felony, theft, or assault. T.C.A. § 39–14–402(a)(3), –403.

*Id.* at *10.

The TCCA also noted that, under the theory of criminal responsibility, the prosecution "can prove a defendant's guilt based on the conduct of another" and that a person may be criminally responsible under Tennessee law if that person "solicits, directs, aids, or attempts to aid" in the commission of an offense "with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense." *Id.* at *10–11 (citations and quotations omitted). The TCCA further stated that Tennessee courts have found that, to be liable for a crime under a theory of criminal responsibility, an individual's participation in a crime may be inferred based up on the "an individual's presence and companionship with the perpetrator of a felony before and after the commission of" the offense, and that "[n]o particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible." *Id.* at *11 (quoting *State v. Watson*, 227 S.W.3d 622, 639 (Tenn. Crim App. 2006)).

In light of these standards, there was plenty of evidence at trial suggesting that Petitioner was voluntarily present for, and aided in, the murder of Jimmy Cutshall with the intent to benefit from it. Specifically, testimony from Chastity Renner established "how mad" both Petitioner and Jones were about the altercation they had with the victims on the evening before the crime during which Rhonda Cutshall alleged that Petitioner had stolen pills from her [Doc. 9-2 p. 83]. Evidence at trial further established that, after the crimes, Petitioner's mother gave police a purse that Petitioner had given her which contained Rhonda Cutshall's identification cards and prescription for Roxycodone alongside Petitioner's identification, financial, and insurance cards and that the police recovered a

bag containing the clothing that Petitioner and Jones wore during the commission of the crimes [Doc. 9-3 p. 39–44; Doc. 9-4 p. 28–29, 33; Doc. 9-5 p. 64]. Further, Petitioner testified that she would have received proceeds from the burglary and theft, acknowledging that she "probably [would have] gotten some pills" [Doc. 9-6 p. 45–46].

But the most relevant—and most damning—evidence suggesting Petitioner's guilt came from a signed statement that she gave to police. Specifically, a detective testified that Petitioner gave police a signed statement about the crimes in which she did not make any allegation that Jones forced her to be present [Doc. 9-4 p. 31–35]. Although the detective acknowledged that he had written the statement and that Petitioner signed it, he testified that he had read the statement to Petitioner and asked if it needed any additions, corrections, or deletions before she signed it [*Id.* at 30]. In this statement, Petitioner stated: that on the night before the crimes, she and Jones had a confrontation with the victims at the victims' trailer; that she was with Jones at a Wal-Mart later that night where he stole masks; that she heard Jones state that they were going to rob the victims before going with Jones to the victims' trailer; that she knew Jones was bringing a rifle with them when they went to the victims' trailer; that she walked to the victims' trailer with Jones while wearing a mask and gloves that Jones had put on her; that she kicked in the victims' front door; that Jones then started shooting the victims; that she had later placed the clothing she wore during this incident in a bag with Jones' clothing; that when she called her mother after the incident, her mother agreed to use Rhonda Cutshall's prescription for Roxycodone and

identification card to obtain that medication; and that Petitioner had therefore given her mother the relevant items from Rhonda Cutshall to her mother [Doc. 9-4 p. 31–35].

The be sure, there was at least some evidence that arguably supported Petitioner's theory. Several witnesses, including Petitioner, her father, her stepmother, her stepbrother, and Officer Gale, testified that Petitioner's codefendant and boyfriend at the time of the crimes, Shawn Jones, had used force against Petitioner and her child on various occasions prior to the crimes, and Petitioner also testified that Jones forced her to be present during the crimes underlying the charges against her [Doc. 9-5 p. 48–67; Doc. 9-6 p. 4–62, 65–71]. Specifically, Petitioner testified that as they made their way to the victims' trailer on October 13, 2009, she attempted to kick and attack Jones and to run away from him, but that Jones forced her to stay with him by threatening her and stating that he would "put a bullet in her," and that she complied because of her fear of Jones based on her knowledge of what he was capable of and what he had done before [Doc. 9-5 p. 59–64].

However, the substantial evidence to the contrary, cited above and in the TCCA opinions, was sufficient for a rational jury to have found that Petitioner was voluntarily present for and assisted Jones in the murder of Jimmy Cutshall with the intent to benefit from it. For example, a reasonable juror could have found from Petitioner's own statement to police: that Petitioner aided in the murder of Jimmy Cutshall by kicking in the trailer's door; that Jones had the relevant intent and premeditation to kill Jimmy Cutshall (which is imputed to Petitioner under Tennessee law based on the criminal-responsibility theory); that Jones murdered Jimmy Cutshall in the perpetration of a robbery, burglary, or theft;

that Petitioner attempted to cover up the crimes with Jones; and that Petitioner would have benefitted from the murder of Jimmy Cutshall. And it would have been reasonable for the jury not to have credited Petitioner's testimony that Jones forced her to be present at the victims' trailer at the time of the crimes.

In any event, it does not matter what the best interpretation of the evidence is. Even on a sufficiency-of-the-evidence challenge, habeas courts do not reweigh the evidence. *Hyde v. Shine*, 199 U.S. 62, 84 (1905). At issue is "not the petitioners; innocence or guilt but solely the question whether their constitutional rights have been preserved," *Moore v. Dempsey*, 261 U.S. 86, 87–88 (1923), here, the right under the Due Process Clause to have all facts found beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358, 364 (1970). Under *Jackson v. Virginia*, 443 U.S. 307 (1979), the evidence is sufficient to sustain a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id. at* 319. In light of that standard, Petitioner has not met her heavy burden to establish that a rational juror could not have found her guilty beyond a reasonable doubt.

This conclusion is further compelled by the deferential nature of this Court's review. A sufficiency-of-the-evidence claim on habeas review must overcome two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). First, under *Jackson*, the court gives deference to the fact finder's verdict "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652,

10

656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16); *see also Cavazos v. Smith*, 565 U.S. 1, 6–7 (2011) (providing that "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting *Jackson*, 443 U.S. at 326). The habeas court must also give additional deference the state court's consideration of the trier-of-fact's verdict pursuant to the highly deferential standards of the AEDPA. *Cavazos*, 565 U.S. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review"). Thus, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

Petitioner has not met that burden here. She has failed to establish that the TCCA's holding that the evidence was sufficient to support her was based on an unreasonable determination of the facts. She therefore is not entitled to § 2254 relief for this claim.

### B.     Defective Indictment

In this claim, Petitioner challenges the TCCA's finding that the indictment against her was not fatally defective under Tennessee law because the grand jury foreman did not mark that it was a "true bill" [Doc. 1 p. 6; Doc. 2 p. 3]. As Respondent correctly points out, however, Petitioner does not assert in her petition that this alleged defect violated her constitutional rights, and she did not exhaust any such claim with the TCCA [Doc. 9-10 p. 46–54].

A federal court may grant habeas relief to a state prisoner only where the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Any error in the application of state law to a prisoner's claim is not cognizable under § 2254. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (holding that "it is not the province of a federal habeas court to reexamine state-court determinations on state-court questions").

As Petitioner does not allege that this alleged defect in the indictment violated her constitutional rights, this claim is not cognizable in this action and the Court will not address it.

## C.     Ineffective Assistance of Counsel

Petitioner makes seven ineffective-assistance-of-counsel claims. However, four of them are procedurally defaulted, and the remaining three lack merit for various reasons. Relief is therefore not warranted based on any of Petitioner's claims of ineffective assistance of counsel.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel

> made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. Petitioner has the burden of proving ineffective assistance of counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

### 1.    Defaulted Claims

Petitioner has procedurally defaulted four of her claims of ineffective assistance of trial counsel, and any purported ineffective assistance by her post-conviction appellate counsel does not excuse that default.

In her § 2254 petition, Petitioner sets forth four claims for ineffective assistance of counsel that she raised in her initial petition for post-conviction relief [Doc. 9-17 p. 6–10], but did not raise in her appeal of the post-conviction court's denial of relief [Doc. 9-20]. These claims include that trial counsel was ineffective for not seeking a change of venue, not seeking to sequester the jury, not retaining an independent witness to testify about battered-woman's syndrome, and not excluding two jurors during *voir dire* [Doc. 1 p. 8]. Respondent asserts that Petitioner procedurally defaulted these claims by not raising them in her appeal of the denial of her petition for post-conviction relief [Doc. 10 p. 43–44]. In her reply, Petitioner acknowledges that she did not raise these claims in this appeal, but asserts that this procedural default is excused because her post-conviction counsel was ineffective for not raising these claims [Doc. 11 p. 1].

Before a district court may grant habeas relief to a state prisoner, the prisoner must exhaust all of her available remedies in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365–66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

A petitioner who fails to raise his federal claim in the state courts and cannot now do so due to a procedural rule has committed a procedural default, which forecloses federal habeas review unless the petitioner shows cause to excuse his failure to comply with the procedural rule and actual prejudice from the constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). An attorney's ineffective assistance in post-conviction proceedings generally does not establish "cause" to overcome procedural default of claims. *Id.* at 755. Where a habeas petitioner could raise a claim for trial counsel's ineffective assistance for the first time in a post-conviction petition, however, ineffective assistance of post-conviction counsel may be "cause" to excuse the procedural default. *Wallace v. Sexton*, 570 F. App'x 443, 452–53 (6th Cir. 2014); *Trevino v. Thaler*, 133 S.Ct. 1911, 1918–21 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012). This exception applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014).

Where a petitioner alleges ineffective assistance of post-conviction counsel to establish cause to excuse a default of an ineffective-assistance-of-trial-counsel claim and alleges that the ineffective assistance of post-conviction counsel occurred only on appeal of his post-conviction petition, however, this exception does not apply, because the appeal was not the first time the petitioner could have raised the claim. *Wallace*, 570 F. App'x at 453.

Petitioner does not dispute that she did not present these claims to the TCCA in her appeal of the denial of her petition for post-conviction relief and therefore did not fully exhaust them. Although Petitioner asserts that her failure to exhaust these claims was the result of the ineffective assistance of her post-conviction counsel on appeal, any such ineffective assistance does not excuse her procedural default of these claims. *Id.* As Petitioner has not set forth any other cause to excuse her procedural default of these claims, the Court will not review them.

### 2. Defective Indictment

Petitioner's trial counsel was not ineffective for failing to timely raise a potential defect in the indictment. Even if counsel rendered deficient performance, Petitioner was not prejudiced because there were no defects in the other felony-murder counts that were later merged with the defective one.

Petitioner alleges that trial counsel was ineffective for not arguing that the first-degree premeditated murder indictment against her was defective because it was not marked as a "true bill" prior to trial [Doc. 1 p. 8; Doc. 2 p. 5]. The TCCA held as follows with respect to this claim:

> Trial counsel testified at the post-conviction hearing that he was aware of the defect in Count 1. He said that he was aware, as well, that Tennessee Rule of Criminal Procedure 12(b)(2)(B) provided that generally, an allegation regarding a defective indictment must be raised before the trial. He noted, though, that the rule also stated that the court could hear a claim at any time if the indictment failed to show jurisdiction or failed to charge an offense. Counsel elected to wait to raise the issue and planned to do so in the motion for judgment of

acquittal because jeopardy attached when the jury had been sworn. According to the proof at the post-conviction hearing, the trial judge noticed the defect before a motion for judgment of acquittal was made. Counsel said he had not raised the issue earlier because he did not want to give the State the opportunity to cure the defect.

The trial transcript reflects that during the State's case-in-chief, the following transpired:

THE COURT: Something that has arisen about this trial, and it has just come to my attention inadvertently that I was sitting up here and opened the file, and I don't think any of the lawyers have caught it yet. I don't think—

[TRIAL COUNSEL]: I think I have, your Honor; I was going to make it, it's the fact that count one of the indictment does not checked [sic] a true bill or a no true bill; is that right?

The court noted that no defect existed as to the remaining counts of the indictment. The court called the grand jury foreperson, who testified that Count 1 was a true bill and that he had failed to check its status as such on the indictment. Counsel made a motion to dismiss the indictment on the basis that jeopardy had attached, although acknowledging that the State still had felony murder charges pending against the Petitioner. The court denied the motion and ruled that the State could proceed on Count 1.

Trial counsel challenged the trial court's ruling in the previous appeal. 'In determining that the Petitioner was not entitled to relief, this court examined relevant cases and said, "It would appear, based on the cases cited and the dicta in [*State v. Applewhite*, 597 S.W.2d 328 (Tenn. Crim. App. 1979)], that the error is not jurisdictional and was therefore waived when the defendant failed to raise it prior to trial."' *Jessica M. Myers*, 2013 WL 5436955, at *14. 'The court went on to conclude that even if the failure to check the "true bill" box on the indictment was jurisdictional, could not be waived, and invalidated the first degree premeditated murder conviction, any error was harmless in view of the felony murder conviction. *Id.* In a footnote, the court acknowledged the trial

court's attempt to cure the defect that occurred in this case and stated that due to the Petitioner's inability to obtain relief, it would not address the effect of the trial court's effort to cure the defect. *Id.*at n.7. This court also directed the trial court to merge the conviction for Count 1 with the convictions for felony murder. *Id.* at *14.

In evaluating trial counsel's conduct, we note that this court acknowledged the lack of clarity in the existing caselaw and an ambiguity in the statute regarding the requirements for a determining what constitutes the finding of a true bill. *See id.* at *13. The Petitioner has cited no authority other than the opinion in her previous appeal and the relevant Rule of Criminal Procedure to support her position that counsel's performance was deficient. We note that had counsel pursued a motion to dismiss before the trial, the State would not have been foreclosed from returning to the grand jury to seek a new indictment. We cannot conclude that the evidence preponderates against the post-conviction court's determination that counsel did not perform deficiently. In any event, dismissal of Count 1, charging first degree premeditated murder, would have availed the Petitioner no benefit because no issue existed with regard to the counts charging felony murder. Ultimately, the Petitioner was convicted of the felony murder counts, which were merged with Count 1. We conclude, therefore, that the trial court did not err in determining that the Petitioner failed to prove that she received ineffective assistance of counsel in this regard. She is not entitled to relief on this basis.

*Myers v. State*, No. E2015–02037–CCA–R3–PC, 2016 WL 6915967, at *9–10 (Tenn. Crim. App. Nov. 23, 2016).

Petitioner has not set forth any facts to overcome the presumption that counsel's decision not to raise this claim earlier may have been sound trial strategy. *Strickland*, 466 U.S. at 687–88 *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (noting

that counsels' strategic decisions are hard to attack). Moreover, nothing in the record suggests that counsel's decision not to raise this issue earlier prejudiced Petitioner, as the prosecution could have cured the defect if he had done so and there was no defect in the indictment against Petitioner for felony murder, which the trial court ultimately merged with the first-degree murder conviction.[1] As such, Petitioner has not established that the TCCA's finding that counsel's performance was not defective as to this issue was contrary to or an unreasonable application of Supreme Court law or an unreasonable determination of the facts and Petitioner is not entitled to § 2254 relief for this claim.

### 3. DNA Evidence from a Fingernail in a Glove

Nor was Petitioner's trial counsel ineffective for failing to challenge certain DNA evidence. Even if this failure was deficient, Petitioner was not prejudiced in light of other evidence introduced at trial.

Petitioner argues that "counsel was ineffective for failing to refute" or file a motion to suppress a serology or DNA report. The report found that Petitioner's DNA matched that from a fingernail found in a glove with gun powder residue and DNA from Jones and

---

[1] While Petitioner asserts that her codefendant Chad Rader received a favorable plea deal soon after his counsel brought up the same error on his indictment in court to establish that counsel's failure to do the same thing resulted in prejudice to her, Respondent notes that this fact does not appear to be in the state-court record and this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

Even if this fact were properly before this Court, however, it alone would be insufficient to establish that Plaintiff's counsel was ineffective, as counsel was acting strategically and nothing in the record supports Petitioner's implied speculation that the prosecution would have offered her a similarly favorable plea deal if counsel had brought up the defect in the indictment prior to trial.

Rhonda Cutshall on it, although the report stated that the sample contained "insufficient or degraded DNA" [Doc. 1 p. 8; Doc. 2 p. 8; Doc. 9-20 p. 11–13]. Petitioner specifically asserts that trial counsel should have argued that this evidence "was extremely prejudicial evidence that the State used to link Ms. Myers to the crime, when the evidence could not have proven that" [Doc. 2 p. 8]. Relatedly, Petitioner asserts that trial counsel should have argued to the jury that this fingernail could have been in the glove for a long time based on the inability to read the DNA and should have retained an expert to testify that it was possible that the presence of the fingernail did not mean that she was the shooter [Doc. 1 p. 8; Doc. 2 p. 9–10].

The TCCA stated as follows with regard to these related claims:

### 1. Examination of Witnesses

The trial record, which was received as an exhibit at the post-conviction hearing, reflects that trial counsel did not ask the Petitioner about other occasions on which she wore the glove. It reflects, however, that at the end of redirect examination, counsel asked the Petitioner if she shot the victims, and she responded that she had not. It likewise reflects that counsel's cross-examination of the State's serology DNA expert focused on the expert's lack of ability to identify when the fingernail was left in the glove. During cross-examination, the expert stated that he had no basis for determining how "old" the fingernail was. He also said that testing would not establish the timeframe within which DNA had been left on an object. Relative to this issue, the post-conviction court noted in its order denying relief that the Petitioner gave three incriminating statements to law enforcement, that her testimony placed her at the crime scene, and that she had attempted unsuccessfully to kick in the door. The court found that the Petitioner's fingernail merely corroborated her presence at the scene and

determined that the Petitioner failed to carry her burden of proving her claim by clear and convincing evidence.

Trial counsel elicited the Petitioner's testimony that she did not shoot the victims. She admitted in her testimony that she had been present, and she acknowledged at the post-conviction hearing that she knew Codefendant Jones wanted to steal pills from the victims' home and that she kicked the door at Codefendant Jones's insistence. Questioning the Petitioner about other times she may have worn the glove would not have diminished the incriminating nature of the facts. The State's expert testified on cross-examination that the testing which had been performed would not establish when the fingernail was left inside the glove or when DNA was deposited on the glove. The Petitioner failed to carry her burden of establishing deficient performance by counsel and prejudice from counsel's actions. The post-conviction court did not err in denying relief on this basis.

## 2. **Suppression**

The Petitioner also contends that trial counsel provided ineffective assistance because he failed to file a motion to suppress the fingernail and glove evidence as unduly prejudicial. She bases this argument upon her own opinion expressed in her post-conviction testimony that a laboratory report showing "degraded" DNA on the glove indicated that the material had been on the glove for some time. The Petitioner did not offer expert proof at the post-conviction hearing to support her claim that the conclusion to be drawn from degraded DNA was that it had been present for some time. As we have noted, the State's serology DNA expert testified at the trial that the testing performed did not establish how long the DNA had been present on the glove and that he could not offer an opinion regarding how long the fingernail had been in the glove. The Petitioner has not provided any citation to authority to support her claim that this evidence should have been suppressed as unduly prejudicial. We note that Tennessee Rule of Evidence 403 provides for exclusion of relevant evidence if its probative value is outweighed by the

danger of unfair prejudice.  This is an evidentiary matter, in contrast to suppression of evidence, which generally addresses constitutional concerns.  *See, e.g.*, *State v. Meeks*, 262 S.W.3d 710 (Tenn. 2008) (addressing constitutionality of a warrantless search); *State v. Garcia*, 123 S.W.3d 335 (Tenn. 2003) (addressing constitutionality of a vehicle stop and whether consensual search of vehicle was sufficiently attenuated from an unlawful detention); *State v. Binette*, 33 S.W.3d 215 (Tenn. 2000) (addressing constitutionality of a warrantless traffic stop).  The Petitioner has not articulated a constitutional basis for suppressing the evidence. The Petitioner failed to carry her burden of establishing deficient performance by counsel and prejudice from counsel's actions. The post-conviction court did not err in denying relief on this basis.

*Meyers v. State*, 2016 WL at *7.

Even if the Court assumes without finding that her trial counsel was deficient for not seeking to suppress this evidence, Petitioner has not met her burden to establish that that failure, or his failure to hire an expert to discount this evidence, prejudiced her.  At trial, Petitioner admitted to wearing gloves at the scene of the crimes and to placing the clothing she wore during the crimes in a bag together with the clothing Jones wore during the crimes, all of which may explain why Petitioner's fingernail was found in a glove with gunshot residue and DNA from Jones and Rhonda Cutshall.  Moreover, it is apparent from the fact that the DNA expert testified that she could not tell from the testing how long the fingernail and/or DNA had been present in or on the glove and that Petitioner testified that she did not shoot the victims that the most relevant evidence to discount the relevancy

and/or potentially incriminating nature of the DNA evidence was introduced without the need for an expert.

Accordingly, Petitioner has not met her burden to establish that the TCCA's determination that counsel was not ineffective with regard to this evidence was contrary to or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. As such, Petitioner is not entitled to § 2254 relief for these claims.

### 4.    Appellate Argument Regarding Fingernail Evidence

Finally, Petitioner's ineffective-assistance-of-appellate counsel argument does not warrant relief because the omitted argument was not stronger than the claims that appellate counsel did raise on appeal and would therefore not have been successful.

Petitioner also asserts that her appellate counsel should have argued in her direct appeal that the glove containing the fingernail affected the weight of the evidence and caused the jury to draw inferences or conclusions about Petitioner being a shooter [Doc. 1 p. 8; Doc. 2 p. 8]. Liberally construing these allegations in Petitioner's favor, it appears that Petitioner argues that counsel should have argued in her direct appeal that the glove in the fingernail was unduly prejudicial evidence that the trial court should not have admitted because it allowed the jury to infer that Petitioner may have shot a gun during the underlying crimes.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely

to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.

 The TCCA stated as follows with regard to this claim:

> The Petitioner's complaint relates, in part, to trial counsel's failure to consult with the Petitioner about the issues to be raised in the appellate brief. She has not identified, however, any information or input she had which would have affected counsel's decisions about the issues to be raised. Likewise, she has not cited authority to show that she was entitled to relief on the issues she complains counsel did not raise. She complains, "The likelihood of a remand, or new trial, was ... limited [by counsel's failure to raise additional issues] and entirely based upon the issues presented in the appellate brief. So, counsel should have explored all options for reversal, not just the limited issue(s) he presented." Trial counsel's testimony reflects that he considered the issues and raised the ones he thought held the possibility for appellate relief. His testimony reflects that he did not raise issues for which he thought the possibility of relief did not exist. Counsel is "not required to raise every conceivable issue on appeal." *See, e.g.*, *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). As a general principle, the decisions regarding which issues to be raised on appeal are within counsel's sound discretion. *See id.* The post-conviction court did not err in determining that the Petitioner failed to carry her burden of proving that counsel's performance was deficient and that she was prejudiced by his actions and inactions. The court did not err in denying relief on this basis.

*Meyers v. State*, 2016 WL at *8.

Although Petitioner speculates that this evidence caused the jury to find that she was a shooter, as set forth above, Petitioner did not have to be a shooter for the jury to find her guilty of all of the underlying offenses, and the most incriminating evidence in the record of Petitioner's guilt for all relevant offense, including murder, came from Petitioner's signed statement, rather than the physical evidence just discussed. Thus, Petitioner has not shown that this omitted argument is clearly stronger than the claims that counsel raised on appeal, as required to establish such a claim of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).

Thus, Petitioner has not met her burden to establish that the TCCA's determination that appellate counsel was not ineffective for not raising this claim on appeal was contrary to or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. Therefore, Petitioner is not entitled to § 2254 relief for this claim.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for a writ of habeas corpus [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial

of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not debate the Court's conclusions that Petitioner procedurally defaulted those claims for ineffective assistance of counsel specified above, or that her defective-indictment claim was not cognizable on federal habeas review. Further, reasonable jurists could not conclude that Petitioner's remaining claims regarding the sufficiency of the evidence, and the actions of her trial and appellate counsel, are adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE